## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LEBRON COPELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-00558-PRW |
| | ) | |
| THE CITY OF LAWTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants City of Lawton, James Smith, William Torres, Abe Woelfel, Kolton Jones, and Nicolas Chilcote's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 119) (the "Motion" or the "Motion to Dismiss"). For the reasons set forth below, the Court **GRANTS THE MOTION IN PART** and **DENIES IT IN PART**.

### *Background*

According to the Amended Complaint (Dkt. 118), the facts are as follows. Lebron Copeland was involved in a traffic collision in the early morning hours of March 15, 2017, and was promptly arrested for driving under the influence. At the time of his arrest, Copeland was exhibiting hemispheric weakness and was unable to walk or stand.

Officers immediately transported Copeland to Comanche County Hospital. There, a physician performed a computed tomography scan and an examination. The scan revealed no abnormalities and Copeland reported no back or neck pain. The treating physician

1

determined Copeland had a high blood alcohol concentration but was otherwise stable and released him to Officer Nicolas Chilcote of the Lawton Police Department.

Copeland was wheelchair-bound upon his release from the hospital, still unable to walk or stand. As Chilcote brought Copeland to his police cruiser, Copeland informed Chilcote of his continued inability to use his legs, prompting Chilcote to bring Copeland back into the emergency room for further examination. An emergency room physician quickly reiterated, however, that the earlier scan revealed nothing that would cause paralysis and chalked the ailment up to intoxication.

Copeland was then taken to the Lawton City Jail. Upon arrival, he was ordered to exit the patrol vehicle, but he was still unable to walk or stand, so officers and jailers put him in a wheelchair. At this point, Copeland was lifted up, again instructed to walk, and then dropped, falling into a heap on the ground. Unsuccessful in their effort to coax ambulation, the officers and jailers returned him to the wheelchair and brought him inside.

A jailer then wheeled Copeland to the entrance of his cell. Once there, the jailer informed Copeland that the wheelchair could not enter the cell, implying that Copeland would need to enter unassisted. Copeland responded that he could not feel parts of his body and was still unable to walk. The jailer proclaimed that Copeland was simply faking injury so he could return to the hospital and, out of frustration, proceeded to toss Copeland halfway on to the bunk. At this point, Copeland lost consciousness.

He slipped back into consciousness sometime later. Still hanging half off the bunk, Copeland attempted to reposition himself, but, with no feeling in his lower extremities, he fell, hitting his head on the bars of the cell. Copeland again fell unconscious.

2

Later that afternoon, an officer brought Copeland back to Comanche Memorial Hospital to address his continued hemispheric weakness and newly emergent back and neck pain. A second computed tomography scan was conducted. As before, the scan revealed no abnormalities. Copeland was given discharge instructions about cervical sprains and returned to police custody.

As he left Comanche Memorial Hospital, Copeland complained to the transporting officer that he had no control over the right side of his body. Unphased, and believing Copeland to be simply malingering based on the fresh medical clearance, the officer attempted to stand Copeland in front of his wheelchair, causing him to immediately crumple to the ground. The officer then placed Copeland back in the wheelchair, brought him to the patrol car, and threw him into the rear of the vehicle.

Upon his return to the Lawton City Jail, Copeland was again thrown into his cell, this time on to the floor. There, he languished for hours, denied assistance in going to the bathroom and his insulin and other medications. After lying on the floor for some hours covered in his own urine and feces, employees on the subsequent shift lifted him on to the bunk.

At around 12:30 PM on March 16, 2017, Copeland was transferred to Comanche County Jail. He was again handled roughly, again deprived of medical care, and again denied assistance in going to the bathroom.

Several hours after that, Copeland was brought before the Honorable Kenny Harris in the Comanche County Courthouse. He was covered in urine and feces, had his pants

slung halfway down to his knees, and was clad with only a single shoe. Judge Harris released the disheveled Copeland on bond.

Copeland then went to Southwestern Medical Center. There, physicians performed another computed tomography scan. This time, the scan revealed several fractures: of the C3, C4, and C5 vertebrae. Copeland's lower-body paralysis persists to this day.

Based on these allegations, on June 7, 2018, Copeland sued the City of Lawton; the Comanche County Facilities Authority; James T. Smith in his individual and official capacities; Kenny Stradley in his individual and official capacities; ten unnamed individuals in their individual capacities; Officer William Torres in his individual capacity; Officer Abe Woefel in his individual capacity; Officer Kolton Jones in his individual capacity; Officer Nicolas Chilcote in his individual capacity; and William Hobbs in his individual and official capacities. He asserts nine claims in total: six under 42 U.S.C. § 1983, two sounding in negligence, and one under the Oklahoma Constitution.

Now, the City of Lawton, Smith, Torres, Woelfel, Jones, and Chilcote (together, "Defendants") ask the Court to reaffirm the earlier dismissal of several of these claims and to dismiss anew the claims against the City of Lawton pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

The Court will address the Motion to Dismiss in steps. First, it will state the applicable standard of review. Then, it will turn to the discrete arguments raised by the

---

[1] *See* Defs.' Mot. to Dismiss and Br. in Supp. (Dkt. 119).

parties, elaborate on the specific claims at issue, discuss the applicable law, and resolve the matter.

*Standard of Review*

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, all well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[2] While a complaint need not recite "detailed factual allegations," "a plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[3] The pleaded facts must establish that the claim is plausible.[4]

*Discussion*

I.    *The Previously Dismissed Claims*

Defendants begin by noting that the Amended Complaint (Dkt. 118) does not reflect the earlier dismissal of certain claims and parties, and then ask the Court to reaffirm these dismissals. In response, Copeland makes clear that his intention was not to relitigate these claims or rejoin these parties. Given that these claims and parties were, in fact, dismissed, and that Copeland acknowledges these earlier dispositions and disavows any pretense of relitigating these issues, the Court finds that these matters are not in dispute and therefore warrant no further discussion.

---

[2] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996)).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[4] *Id.*

II.     *A Procedural Question: Whether the Failure to Raise an Available Argument in an Earlier Motion to Dismiss Precludes the Later Raising of that Argument*

Copeland makes a threshold, procedural argument in an effort to foreclose consideration of the balance of the Motion to Dismiss that the Court must necessarily address before turning to the substantive arguments. Namely, Copeland argues that the City of Lawton could have raised its current arguments in an earlier motion to dismiss for failure to state a claim but failed to do so. Therefore, he continues, it is precluded from raising those arguments now.

Copeland's argument is without merit and contrary to the law in this circuit. An argument that could have been raised in a motion to dismiss for failure to state a claim, but was not, remains available.[5]

III.    *The City of Lawton's Potential Liability as a Municipality*

a.  *The Parties' Arguments on Motion to Dismiss*

Now, the Court turns to the City of Lawton's chief, substantive contention: that Copeland has failed to allege enough facts to state a claim under 42 U.S.C. § 1983 against it as a municipality.

The Amended Complaint (Dkt. 118) is robustly generic and, as a result, thoroughly vague in its legal statements and theories. But, at a high level, Copeland appears to assert 42 U.S.C. § 1983 claims against the City of Lawton based on the use of excessive force

---

[5] *See Albers v. Bd. of Cty. Comm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 701–04 (10th Cir. 2014) (finding a district court's consideration of an argument that could have been raised in an earlier motion to dismiss for failure to state a claim but was not was harmless error because that argument could be presented in a motion for judgment on the pleadings or at trial).

and the inadequate administration of medical care. He seems to allege that the use of excessive force and deprivation of medical care are the predictable consequence of certain affirmative municipal customs, policies, and practices or, alternatively, are the product of a culpable failure to train or supervise. Copeland's scattershot pleading distills to four distinct legal theories: that an affirmative municipal custom, policy, or practice of using excessive force caused his injuries; that a culpable failure to train or supervise with respect to the use of excessive force caused his injuries; that an affirmative municipal custom, policy, or practice of withholding adequate medical care caused his injuries; and that a culpable failure to train or supervise with respect to the administration of adequate medical care caused his injuries.

In the Motion to Dismiss, the City of Lawton argues that these claims against it, as a municipality, must be dismissed for failure to state a claim upon which relief can be granted. As to the theories premised on an affirmative municipal custom, policy, or practice, the City of Lawton argues that Copeland has failed to adequately identify such a municipal custom, policy, or practice and, even if he has, he has failed to adequately allege that it caused his injuries. As to the theories premised on a culpable failure to train or supervise, the City of Lawton argues that Copeland has failed to allege that it disregarded a known or obvious consequence of its inaction and, even if he has adequately done so, he has failed to adequately allege that such inaction caused his injuries.

b. *The Law on Municipal Liability Under 42 U.S.C. § 1983*

The applicable law is as follows. Title 42 U.S.C. § 1983, which provides the cause of action for the claims at issue, provides in relevant part:

7

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."[6] "But, under § 1983, local governments are responsible only for 'their *own* illegal acts.'"[7] "They are not vicariously liable under § 1983 for their employees' actions."[8]

To state a claim against a municipality under § 1983, a plaintiff must allege facts showing that a municipal employee committed a constitutional violation and that a municipal policy or custom was the moving force behind that constitutional deprivation.[9] A plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must also demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences.[10]

---

[6] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978)).

[7] *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)) (citing *Monell*, 436 U.S., at 665–683).

[8] *Id.* (citing *Pembaur*, 475 U.S. at 691; *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases)).

[9] *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998).

[10] *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997); *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

A "policy or custom," in this context, can take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[11]

Causation, meanwhile, is established if the challenged policy or practice is shown to be "closely related to the violation of the plaintiff's federally protected right."[12] "This requirement is satisfied if the plaintiff shows that the municipality was the 'moving force' behind the injury alleged."[13]

Finally, the "deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[14]

---

[11] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)).

[12] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[13] *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

[14] *Quintana v. Santa Fe Cty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

c. *Assessing the Sufficiency of Copeland's Allegations in the Amended Complaint*

With this legal framework in mind, the Court finds that Copeland has adequately alleged facts sufficient to sustain his theory that an affirmative municipal custom, policy, or practice of using excessive force caused his injuries. As to the existence of a municipal custom, policy, or practice, Copeland asserts that the City of Lawton has an informal but widespread practice of using excessive force against restrained suspects that pose no threat or potential threat to officers or jailers. To that end, he alleges that he was forcefully thrown into his cell and a police cruiser several times by several different officers and jailers over the course of his approximately thirty-six hours in custody. Taken together, these allegations are sufficient to plausibly allege an informal municipal custom at this juncture.

As for causation, the Court can infer that the aforementioned informal practice was the moving force behind the alleged unconstitutional use of force by virtue of the ubiquity and frequency of the use of such force. The Court therefore rejects the City of Lawton's argument that Copeland has not alleged facts sufficient to show the requisite municipal custom, policy, or practice and causation.

The Court also finds that Copeland has adequately alleged facts sufficient to sustain his theory that a culpable failure to train or supervise with respect to the use of excessive force caused his injuries. As explained earlier, to sustain a 42 U.S.C. § 1983 claim predicated on a failure to adequately train or supervise, a claimant must demonstrate that such failure results from "deliberate indifference" to the injuries that may result. Such "deliberate indifference" is shown where the municipality has actual or constructive notice

10

that its failure to train or supervise is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. Copeland has adequately alleged deliberate indifference for much the same reason that he has adequately alleged an informal municipal custom: He has pleaded facts demonstrating a recurrent and widespread use of excessive force. If there is, indeed, such use of excessive force, then it is reasonable to infer that those in charge were or should have been aware of it. That is enough to establish deliberate indifference at this stage.

As to causation, the Court is satisfied, for purposes of this early inquiry into the sufficiency of the complaint, that additional training about, or supervision over, the use of force could have curbed these excesses. The Court therefore rejects the City of Lawton's argument that Copeland has insufficiently alleged facts showing deliberate indifference and causation as to this claim.

As for the claim that an affirmative municipal custom, policy, or practice of withholding medical care caused his injuries, however, the Court finds the Amended Complaint deficient. Copeland rattles off a boilerplate list of supposed municipal customs, policies, and practices that purportedly deprive detainees of adequate medical care. For example, he alleges the City of Lawton has a custom, policy, or practice of "[u]ntimely medical examinations and treatment," of "[u]nderstaffing . . . medical personnel," and of disallowing "transport to off-site [medical] providers." But Copeland fails to provide any facts in support of these allegations. He points to no formal regulation or policy statement or evidence of other instances of like deprivation demonstrating an informal custom amounting to a permanent, well-settled, and widespread practice. Likewise, he points to no

decision of an employee with final policymaking authority or any ratification by a final policymaker of the decisions of subordinates to whom authority was delegated subject to that policymaker's review and approval. In effect, Copeland merely describes the purported constitutional violation and proclaims it to be standard municipal operating procedure. But under *Iqbal* and *Twombly*, that is not enough.[15]

In fact, Copeland effectively alleges the opposite—that there *is* a custom, policy, or practice of providing timely medical assistance. According to Copeland, an officer brought him to the hospital immediately after his car accident. After that, as he was being brought from the hospital to the jail, the transporting officer turned around to bring him back to the emergency room for a second time. Then, later, he was brought back to the hospital for a third time.

And even if Copeland did provide sufficient facts to nudge his allegation that there was a municipal custom, policy, or practice of withholding adequate medical care across the line to plausibility, there is no allegation of fact or reasonable inference that such custom, policy, or practice caused the deprivation of medical care of which he now complains. Rather, to the extent he was deprived of medical treatment, that deprivation is the product of successive clearances given by medical professionals who may have been negligent in clearing him. Accordingly, the Court dismisses Copeland's 42 U.S.C. § 1983

---

[15] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks omitted))).

claims against the City of Lawton predicated on a theory of a municipal custom, policy, or practice of withholding adequate medical care.

Copeland's claim that a culpable failure to train or supervise with respect to the administration of adequate medical care caused his injuries fares no better. As mentioned earlier, to state a claim for relief under 42 U.S.C. § 1983 resting on a theory of failure to train or supervise, a claimant must furnish facts sufficient to allege, among other things, deliberate indifference. Again, deliberate indifference is shown where the municipality has actual or constructive notice that its failure to train or supervise is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. Here, Copeland avers that "Defendants knew and/or it was obvious" that the failure to adequately train or supervise staff "with respect to the proper assessment, classification[,] and treatment of inmates with serious medical needs including head and neck trauma" and with respect to the identification, assessment, and reaction to emergent medical situations "posed an excessive risk to the health and safety of inmates." Defendants nevertheless "disregarded th[ese] known and/or obvious risk[s]," Copeland continues. But, unlike with his excessive force claim, he mentions no pattern of similar incidents that should have alerted policymakers to the likely prospect of further constitutional violations absent ameliorative training or supervision, and he provides no facts that would suggest that policymakers actually knew of ongoing or prospective constitutional violations that could be rectified with such training or supervision. In effect, Copeland relies solely on

legal conclusions couched as factual allegations and the bald assertion that "it was obvious" to supply the requisite deliberate indifference. But, again, that is not enough.[16]

And even if the Court were to accept Copeland's argument that the risk posed by these failures to train "was obvious," and therefore deliberate indifference is alleged, what is not obvious is how additional training or supervision "with respect to the proper assessment, classification[,] and treatment of inmates with serious medical needs including head and neck trauma" and the identification, assessment, and reaction to emergent medical situations would have made any difference in the face of the successive opinions of medical professionals. In other words, Copeland's claim that a culpable failure to train caused him to be deprived of adequate medical treatment also fails because he does not plausibly allege causation, as is necessary to state a claim for municipal liability under 42 U.S.C. § 1983.

*Conclusion*

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss as to the claims of municipal liability against the City of Lawton predicated on the deprivation of adequate medical care and **DENIES** Defendants' Motion to Dismiss as to the claims of municipal liability against the City of Lawton predicated on the use of excessive force.

**IT IS SO ORDERED** this 25th day of May 2021.

PATRICK R. WYRICK<br>
UNITED STATES DISTRICT JUDGE

---

[16] *See id.*